[Cite as *State v. Young*, 2013-Ohio-5247.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99552**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARCUS YOUNG

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-564619

**BEFORE:** Rocco, P.J., E.A. Gallagher, J., and Blackmon J.

**RELEASED AND JOURNALIZED:** November 27, 2013

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Daniel T. Van
     Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, P.J.:

{¶1} In this appeal, defendant-appellant Marcus Young asserts that his conviction for one count of escape under R.C. 2921.34(A)(3) was not supported by sufficient evidence and was against the manifest weight of the evidence. Under either standard, the evidence establishes that Young violated the statute. Accordingly, we affirm the trial court's final judgment.

{¶2} On March 13, 2012, Young was released from incarceration for an unrelated offense, and he was placed on postrelease control. His case was assigned to parole officer Tenisha Long. Young was subsequently indicted for escape, on the grounds that his conduct broke the terms of his supervised release detention. The case proceeded to a jury trial. Long was the sole witness.

{¶3} Long testified that, on March 13th, Young failed to report to the Harbor Light halfway house. As a result, Long placed Young on "whereabouts unknown" status. Long testified that if a person remains on this status for 30 days, she issues a warrant for that person's arrest.

{¶4} But Young called Long six days later on March 19th. The two met in person the next day. At the meeting, Young explained to Long that he had not reported to Harbor Light because, although he knew he was breaking his supervised release detention, he had wanted to see his children, and he was afraid that he would be made to

stay at Harbor Light. Because Harbor Light would no longer accept Young, Long approved Young to reside at his girlfriend's house, and Young provided Long with a Beachwood address as his place of residence.

{¶5} Long testified that, at their meeting on March 20th, she reviewed a document with Young detailing the conditions of his supervised release. The document, which was entered into evidence, was signed by Young and stated that Young would follow all orders given to him by Long, "including, but not limited to informing [Long] of any changes in residency the next business day   * * *." The document further stated that if Young violated any condition of his supervised release he could be subject to sanctions, including imprisonment.

{¶6} Young was scheduled to meet with Long again on April 13th, but he failed to report to that meeting. Long did not attempt to contact Young, but Young contacted her around April 20th. He told Long that he failed to report to the April 13th appointment because he had been told at the license bureau that he had outstanding warrants, and he was afraid that Long would arrest him when he arrived at the appointment. Long responded by setting yet another appointment for a few days later. Again, Young failed to report, and Long did not attempt to contact Young. Following the pattern, Young contacted Long by phone, explaining that he did not come to this appointment because he had gotten a job and did not want to miss work. Long agreed that Young could come and meet with her at another scheduled time on May 4th, but Young did not report for that appointment either. Young called Long telling her that he had missed the meeting

due to an emergency with his children. In response, Long told Young that he needed to report to her on May 11th. Young failed to report.

{¶7} This time, Long attempted to contact Young by telephone. Unable to reach him by telephone, Long decided to conduct a home visit. Long went to the Beachwood address that Young had earlier provided, where she learned from Young's girlfriend that Young had not resided at that address for approximately one month.

{¶8} Young subsequently called Long and explained that he missed the May 11th appointment because he was concerned that Long was going to arrest him. During this phone conversation, Long confronted Young with her discovery that he no longer lived at the Beachwood address. Long insisted that he did live at the Beachwood residence and that Young's girlfriend had lied to Long because she had been upset with him that day. Long told Young that she would be making another home visit the following week, that Young needed to be present at the home when Long made the visit, and that Young would have to provide Long with additional proof of residency. Long testified that sometime between May 16th and 18th, she conducted the home visit, but Young was not present. Young never provided Long with any documentation to support his claim that he lived at the Beachwood address.

{¶9} Long contacted her supervisor and explained the situation; Young was once again placed on "whereabouts unknown" status. Long went back to the Beachwood residence in June, and no one was home at that time. At this point, Long issued a warrant for Young's arrest.

{¶10} The jury found Young guilty of escape, and the trial court sentenced Young to ten months imprisonment. This appeal follows.

{¶11} In his first assignment of error, Young asserts that the trial court erred in denying his Crim.R. 29 motion, because the evidence was insufficient to support his conviction. We disagree, and so we overrule the assignment of error.

{¶12} When a defendant makes a motion under Crim.R. 29(A), the trial court shall enter a judgment of acquittal if the evidence is insufficient to sustain a conviction for the offense. When we review on appeal whether the verdict was supported by sufficient evidence, our task is to determine whether "'after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶13} The sole count of the indictment alleges that Young violated R.C. 2921.34(A)(3), which states as follows:

> No person, knowing the person is under supervised release detention or being reckless in that regard, shall purposely break or attempt to break the supervised release detention or purposely fail to return to the supervised release detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.

{¶14} Young makes two arguments in support of this assignment of error. First, Young contends that the state failed to establish that his conduct violated the statute. Young points out that the indictment alleges that he violated the statute on or about May 18, 2012. According to Young, the indictment was based on his failure to report, but Long testified on cross-examination that she could not recall whether she saw Young in person at any point during the month of May. Long testified that Young was required to report to her, in person, once a month. Young argues that, because he was only required to report to Long, in person, once a month, and because Long could not recall whether he reported in person during the month of May, the state had failed to prove that Long violated the statute on or about May 18, 2012.

{¶15} Long's argument is without merit. The evidence reveals that the indictment was not based on any of Young's numerous failures to report to appointments at Long's office.[1] Rather, Young was indicted because his whereabouts were unknown for over 30 days. Long had attempted a home visit and discovered that Young did not live at the address he had provided. On or about May 18th, Long went back to the Beachwood residence to conduct another home visit and Young was not present, despite the fact that Long had informed Young that his presence was required. Further, Young failed to comply with Long's request to provide documentation verifying that he lived at

---

[1]But Young could have been indicted for escape for any one of his failures to report, beginning in March. A parolee who fails to report to his parole officer may be prosecuted for escape under R.C. 2921.34. *State v. Jones*, 8th Dist. Cuyahoga No. 89662, 2008-Ohio-911, ¶ 6, citing *State v. Thompson*, 102 Ohio St.3d 287, 2004-Ohio-2946, 809 N.E.2d 1134.

the Beachwood address. Long visited the Beachwood address once more in June, and, again, Young was not present. Long's testimony provided sufficient evidence to establish that Young's whereabouts were unknown, and thus, the trial court was presented with sufficient evidence to sustain a conviction for escape under R.C. 2921.34(A)(3). *See State v. Smith*, 8th Dist. Cuyahoga No. 88002, 2007-Ohio-717, ¶ 3 (affirming escape conviction where defendant was declared "whereabouts unknown" by the parole board).

{¶16} Young also argues that the evidence did not establish that he acted purposely in breaking the supervised release detention. We disagree.

> A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

R.C. 2901.22(A).

{¶17} Young points out that on numerous occasions, Long had acted permissively towards Young. Young asserts that his actions on the date in question were no different than his actions on previous occasions. Because Long had established that this course of conduct was acceptable, Young argues that he reasonably believed that his conduct was consistent with the terms of his supervised release. The argument follows that on May 18, 2012, he had not formed the specific intent to break supervised release detention.

{¶18} Again, Young's argument is based on the faulty assumption that he was indicted based on his failure to appear for appointments at Long's office. Although Long had permitted Young to miss numerous appointments at her office, she had not taken any

action towards Young that would reasonably lead him to believe that he did not need to provide accurate information about his whereabouts.

{¶19} Furthermore, Young's argument boils down to an assertion that he could not form the intent to violate the statute on this occasion, because he had managed to get away with violating the statute numerous times in the past. But Long's refusal to sanction Young for earlier non-compliance does not prove that Young was unaware of the requirements of his supervised release detention.

{¶20} Rather, the evidence at trial established that Long understood the conditions of his postrelease control, including the condition that he was to inform Long of any changes in his residency. Young had met with Long in March to discuss the terms of his postrelease control, and he had signed a document setting forth that he understood those terms. Long testified that she later discovered that Young no longer resided at the Beachwood address. Young never informed Long that he had moved to a different location. When Long confronted Young, rather than providing her with accurate information about his whereabouts, Young continued to insist that he lived at the Beachwood address. The state presented sufficient evidence that Young understood the requirement that he inform Long as to his place of residence, and that Young specifically intended to conceal his whereabouts from Long. Accordingly, Young acted with purpose, and his argument to the contrary is unavailing. Having determined that the state presented sufficient evidence to sustain Young's conviction, we conclude that the

trial court did not err in denying his Crim.R. 29 motion. We overrule the first assignment of error.

**{¶21}** In his second assignment of error, Young asserts that his conviction was against the manifest weight of the evidence. We disagree. In evaluating whether a conviction is against the manifest weight of the evidence, this court sits as the thirteenth juror. Our task is to review the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether the jury clearly lost its way such that there was a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A new trial is warranted only in the exceptional case where the evidence weighs heavily against the conviction. *Id.*

**{¶22}** In support of his argument that his conviction was against the manifest weight of the evidence, Young essentially repeats the same arguments made in his first assignment of error. Viewing these arguments under the manifest weight of the evidence standard does not change our conclusion. Long's testimony and the signed document entered into evidence credibly established that Young violated the escape statute. Accordingly, the jury did not lose its way in finding Young guilty and we overrule the second assignment of error.

**{¶23}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR