[Cite as *State v. Plymale*, 2020-Ohio-1190.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 6-19-05

    v.

ADAM GRANT PLYMALE,                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. CRI 20182136

**Judgment Affirmed**

**Date of Decision: March 30, 2020**

APPEARANCES:

    *Todd A. Workman* for Appellant

    *Jason M. Miller* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Adam G. Plymale ("Plymale"), appeals the March 18, 2019 judgment of sentence of the Hardin County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} Plymale was released from the Ohio State Penitentiary on April 16, 2017 after serving time for a previous criminal conviction. Upon his release, Plymale was placed on postrelease control ("PRC"), a form of supervised release. This case arises from Plymale's failure to report to his parole officer as directed from November 9, 2018 through December 8, 2018.

{¶3} On December 12, 2018, the Hardin County Grand Jury indicted Plymale on one count of escape in violation of R.C. 2921.34(A)(3), a fifth-degree felony. (Doc. No. 1). On December 21, 2018, Plymale appeared for arraignment and entered a plea of not guilty. (Doc. No. 5).

{¶4} A jury trial was held on March 13, 2019. (Doc. No. 24); (Mar. 13, 2019 Tr., Vol. I, at 6).[1] At the close of the State's case, Plymale made a motion for acquittal under Crim.R. 29, which the trial court denied. (Doc. No. 24); (Mar. 13, 2019 Tr., Vol. II, at 4-7). (*See* Mar. 13, 2019 Tr., Vol. I, at 132). On March 13, 2019, the jury found Plymale guilty of escape in violation of R.C. 2921.34(A)(3).

---

[1] The transcript of the March 13, 2019 jury trial is divided into two separate volumes. Although the volumes are not designated as such, for clarity and ease of discussion, we will refer to the volume containing the proceedings occurring in the courtroom as Volume I and the volume containing the proceedings occurring in the judge's chambers as Volume II.

(Doc. No. 23); (Mar. 13, 2019 Tr., Vol. I, at 171). On March 14, 2019, the trial court filed its judgment entry of conviction. (Doc. No. 24).

{¶5} On March 13, 2019, immediately following the jury trial, the trial court sentenced Plymale to 12 months in prison as to the single count of escape. (Doc. No. 28); (Mar. 13, 2019 Tr. at 191-192). Additionally, Plymale's PRC was terminated, and he was sentenced to 426 days in prison to be served prior to and consecutively to the 12-month term imposed for the escape charge. (*Id.*); (*Id.* at 192-194). On March 18, 2019, the trial court filed its judgment entry of sentence. (Doc. No. 28).

{¶6} On March 28, 2019, Plymale filed a notice of appeal. (Doc. No. 31). He raises one assignment of error.

## Assignment of Error

**The verdict reached by the Jury in this case was not supported by sufficient legal evidence and was against the manifest weight of the evidence presented at trial.**

{¶7} In his assignment of error, Plymale argues that his escape conviction is based on insufficient evidence and against the manifest weight of the evidence.

{¶8} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Accordingly, we address each legal concept individually.

**{¶9}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

**{¶10}** On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier

of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{¶11} Plymale was convicted of escape in violation of R.C. 2921.34(A)(3), which provides, "No person, knowing the person is under supervised release detention or being reckless in that regard, shall purposely break or attempt to break the supervised release detention * * *." R.C. 2921.34(D) defines "supervised release detention" as

> [D]etention that is supervision of a person by an employee of the
> department of rehabilitation and correction while the person is on any
> type of release from a state correctional institution, other than
> transitional control under section 2967.26 of the Revised Code or

placement in a community-based correctional facility by the parole board under section 2967.28 of the Revised Code.

{¶12} "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "'"The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all other facts and circumstances in evidence."'" *State v. Swaney*, 3d Dist. Auglaize No. 2-18-20, 2019-Ohio-3141, ¶ 11, quoting *State v. Puterbaugh*, 142 Ohio App.3d 185, 189 (4th Dist.2001), quoting *State v. Hardin*, 16 Ohio App.3d 243, 245 (10th Dist.1984). "Purpose can be established by circumstantial evidence." *State v. Kennedy*, 3d Dist. Logan No. 8-18-01, 2018-Ohio-4172, ¶ 25, citing *State v. Nicely*, 39 Ohio St.3d 147 (1988).

{¶13} At trial, the State offered the testimony of Officer Todd Frazier ("Officer Frazier"), a probation and parole officer with the Adult Parole Authority ("APA") of Hardin County. (Mar. 13, 2019 Tr., Vol. I, at 36-39). Officer Frazier testified that the APA started supervising Plymale on April 16, 2017 upon his release from the Ohio State Penitentiary. (*Id.* at 41). Officer Frazier testified that he began supervising Plymale in June 2018. (*Id.* at 39-40, 43). Prior to that time,

Plymale was supervised by Officer Frazier's colleague, Officer Scott Basinger ("Officer Basinger"). (*Id.*).

{¶14} Officer Frazier stated that Plymale was on PRC, which is a form of supervision given to certain inmates upon their release from incarceration. (*Id.* at 41). He described PRC as being "less intense than most probations." (*Id.* at 42). Officer Frazier testified that individuals on PRC are subject to a number of rules, regulations, and restrictions. (*Id.* at 43-44). They are advised of the rules and conditions imposed on them when they sign a form referred to as Conditions of Supervision. (*Id.* at 44). Officer Frazier identified State's Exhibit 1 as Plymale's Conditions of Supervision, which Plymale signed on April 17, 2017. (*Id.* at 45-47). (*See* State's Ex. 1). Included in Plymale's Conditions of Supervision was the condition that he follow all orders given to him by his supervising officer. (State's Ex. 1). Officer Frazier identified State's Exhibit 2 as Plymale's *revised* Conditions of Supervision, which Plymale signed on December 19, 2017. (Mar. 13, 2019 Tr., Vol. I, at 49). (*See* State's Ex. 2). Plymale's revised Conditions of Supervision contains all of the original conditions from his original Conditions of Supervision and three additional conditions. (Mar. 13, 2019 Tr., Vol. I, at 49-53); (State's Exs. 1, 2).

{¶15} Officer Frazier testified that individuals under his supervision are required to report in to him. (Mar. 13, 2019 Tr., Vol. I, at 54). Officer Frazier stated

that individuals under his supervision do not have set dates that they must report in; rather, Officer Frazier notifies them when they must report in. (*Id.* at 54-55). Offenders who are not in compliance get a little less notice than individuals who are in compliance. (*Id.* at 55).

{¶16} Officer Frazier testified that prior to 2018, Plymale was generally compliant with his reporting. (*Id.* at 63). However, in 2018, Plymale was struggling with substance abuse issues and was subsequently sent to a correctional treatment facility ("CTF"). (*Id.* at 63-64). Plymale was released from the CTF on August 29, 2018. (*Id.* at 64). Plymale reported in to Officer Frazier on August 30, 2018, as directed. (*Id.* at 64-65). At this meeting, Plymale informed Officer Frazier that he was living with his aunt and uncle in a house approximately two blocks away from the courthouse. (*Id.* at 65). Officer Frazier instructed Plymale to report back to his office on September 5, 2018. (*Id.* at 67).

{¶17} However, Officer Frazier testified that Plymale failed to report in on September 5, 2018, as directed. (*Id.*). As a result, on September 26, 2018, Officer Frazier made a visit to Plymale's last known home address. (*Id.*). Plymale was not at the residence, but Officer Frazier spoke to his aunt, Madeline Hunsicker ("Hunsicker"), who told him that Plymale was searching for employment in Toledo. (*Id.* at 67-69). Officer Frazier stated that he asked Hunsicker to tell Plymale to report in to him the following day at 9:00 a.m. (*Id.* at 69). Officer Frazier gave

Hunsicker a business card to give Plymale that contained the same instruction. (*Id.*). That same day, Officer Frazier also called Plymale and left a voicemail telling Plymale to contact him. (*Id.* at 67-68).

{¶18} Officer Frazier stated that although Plymale did not report at 9:00 a.m. on September 27, 2018, as directed, he did report in later that day. (*Id.* at 70). The next contact Officer Frazier had with Plymale was a telephone conversation on October 5, 2018. (*Id.*). During the telephone conversation, Officer Frazier set a date for the next office visit for October 9, 2018. (*Id.* at 71). However, Plymale failed to report on October 9, 2018 as instructed. (*Id.*). On November 8, 2018, Officer Frazier went back to Plymale's residence. (*Id.*). Officer Frazier spoke to Hunsicker who told him that Plymale was not home. (*Id.* at 72). Officer Frazier testified that he told Hunsicker that Plymale was instructed to report in to him the next day. (*Id.*). Officer Frazier gave Hunsicker a business card to give to Plymale that contained the same instruction. (*Id.*). However, Officer Frazier testified that he received no contact from Plymale on November 9, 2018. (*Id.*).

{¶19} Officer Frazier testified that when an individual on PRC stops reporting as directed, the APA follows a process by which they declare the offender "whereabouts unknown." (*Id.* at 55-56). When an individual has been declared "whereabouts unknown," the APA takes steps to locate them, such as through telephone calls and visits to the individual's residence or employer. (*Id.* at 56-57).

The APA also runs record checks with local law enforcement. (*Id.*). Officer Frazier stated that as a result of a "whereabouts unknown" designation, the APA office issues local arrest orders to local police departments. (*Id.* at 58-59). Officer Frazier testified that following a conversation with his supervisor on November 9, 2018, Plymale was declared "whereabouts unknown." (*Id.* at 72-73).

{¶20} On November 13, 2018, Plymale called Officer Frazier after office hours and left a voicemail. (*Id.* at 74). In the voicemail, Plymale stated that he was working in Toledo. (*Id.*). However, Plymale did not give the name of the employer or an explanation for missing the appointments. (*Id.*). Officer Frazier testified that the APA does not consider voicemails to be a contact with the offender. (*Id.* at 74-75). Officer Frazier testified that on November 29, 2018, he attempted another visit to Plymale's residence. (*Id.* at 77). Officer Frazier testified that he did not make contact with anyone at the residence, but he placed a card in the door with instructions for Plymale to contact him as soon as possible. (*Id.* at 77-78). On December 3, 2018, Officer Frazier sent a letter to the Hardin County Prosecutor to inform him that Plymale had escaped from detention. (*Id.* at 61-62). (*See* State's Ex. 3).

{¶21} Officer Frazier stated that if the APA is unable to locate an individual who has been declared "whereabouts unknown," the individual can be declared a violator at large. (Mar. 13, 2019 Tr., Vol. I, at 58-59). Officer Frazier testified that

-10-

when an individual is declared a violator at large, the APA issues a statewide arrest warrant for the offender. (*Id.*).

{¶22} On December 7, 2018, Officer Frazier submitted a request to the Ohio Department of Rehabilitation and Correction ("ODRC") to have Plymale declared a violator at large. (*Id.* at 78-79); (State's Ex. 4). Officer Frazier identified State's Exhibit 4 as the violator-at-large request for Plymale that he submitted to the ODRC. (Mar. 13, 2019 Tr., Vol. I, at 79). (*See* State's Ex. 4). Officer Frazier identified State's Exhibit 5 as the Special Minutes from the State of Ohio APA, dated December 10, 2018, which notified Officer Frazier that Plymale was officially declared a violator at large, effective November 9, 2018. (Mar. 13, 2019 Tr., Vol. I, at 81-83); (State's Ex. 5). Officer Frazier testified that Plymale was arrested by the Kenton Police Department on December 7, 2018. (Mar. 13, 2019 Tr., Vol. I, at 83).

{¶23} Officer Frazier testified that his office hours are 8 a.m. to 4:30 p.m., but he is willing to work with offenders if they are unable to report in at the requested day and time. (*Id.* at 55, 84.). For instance, to accommodate offenders who are working, Officer Frazier has met with individuals at their place of employment during their lunch break, stayed after hours, and come in on weekends. (*Id.*). Officer Frazier also stated that offenders who are working out of town are able to check in with another county's APA office. (*Id.* at 84).

**{¶24}** Officer Frazier also testified that there is a sign-in sheet at his office that offenders are able to sign if they come to his office while he is out. (*Id.* at 85). Officer Frazier stated that the sign-in sheet did not indicate that Plymale had appeared and signed the sheet in Frazier's absence. (*Id.* at 85-86).

**{¶25}** Officer Frazier stated that Plymale never physically reported to his office after September 27, 2018. (*Id.* at 85). Officer Frazier also contended that although Plymale stated in his voicemail that he was working in Toledo, he never provided Officer Frazier with the name of the employer, the contact information of the employer, or any proof of employment, such as a pay stub. (*Id.* at 86).

**{¶26}** On cross-examination, Officer Frazier stated that he did not specifically tell Plymale that he could report in at the Toledo APA office because Officer Frazier was not aware that Plymale was working in Toledo. (*Id.* at 97-98). Additionally, Officer Frazier stated that the sign-in sheet in his office would not necessarily be accessible to a person who showed up after hours because the sign-in sheet is located inside the locked door. (*Id.* at 96-97). Officer Frazier stated that although he never drug tested Plymale, he feared that Plymale may be struggling with substance abuse again because of his lack of reporting. (*Id.* at 92-93). However, Officer Frazier acknowledged that in Plymale's previous dealings with the APA, it appeared that even if he had used drugs, he still reported. (*Id.* at 93).

{¶27} Officer Frazier testified that according to documents contained in Plymale's APA file, it appears that when Plymale was under Officer Basinger's supervision, Plymale did not have contact with Officer Basinger from May 2, 2017 to June 5, 2017. (*Id.* at 104, 110-111). The same documents indicated that Plymale did not have an in-person contact with Officer Basinger from August 3, 2017 to September 5, 2017. (*Id.* at 111). Officer Frazier further stated that the documents indicate that Officer Basinger did not have contact with Plymale from October 3, 2017 to November 17, 2017. (*Id.* at 111-112).

{¶28} Officer Frazier stated that he did not actually witness Hunsicker give Plymale the business cards with the instructions to report in. (*Id.* at 114, 117). Likewise, Officer Frazier did not witness Plymale receive the business card he left in the door on November 29, 2018. (*Id.* at 120-121). Officer Frazier testified that he did not return the voicemail Plymale left him on November 13, 2018. (*Id.* at 119-120).

{¶29} On redirect examination, Officer Frazier testified that although the sign-in sheet may not be available to individuals who come to his office after hours, there are a number of other ways that an offender could contact him after hours. (*Id.* at 125-128). Officer Frazier testified that offenders can contact him via telephone call or text message. (*Id.*). Offenders can also leave a message for Officer Frazier through the mail slot in his office door. (*Id.* at 127-128).

{¶30} Following Officer Frazier's testimony, the State's exhibits were admitted without objection. (*Id.* at 131-132); (Mar. 13, 2019 Tr., Vol. II, at 4). Thereafter, the State rested. (Mar. 13, 2019 Tr., Vol. I, at 132). Plymale made a Crim.R. 29 motion for acquittal, which the trial court denied. (Mar. 13, 2019 Tr., Vol. II, at 4-7). Thereafter, Plymale rested. (Mar. 13, 2019 Tr., Vol. I, at 132).

{¶31} We first review the sufficiency of the evidence supporting Plymale's escape conviction. *State v. Velez,* 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist. Marion No. 9-98-46, 1999 WL 355190, *1 (Mar. 26, 1999). Plymale argues that the State failed to provide sufficient evidence to support his escape conviction. Plymale does not contest that he was under supervised release detention. Rather, he argues that he did not purposely break the supervised release detention. (Appellant's Brief at 9). Specifically, Plymale argues that the State failed to present evidence as to his mental state and, thus, did not present sufficient evidence for each element of the offense. (*Id.*). Accordingly, we will review only whether the State presented sufficient evidence to prove that he purposely broke his supervised released detention.

{¶32} Upon our review of the record, we conclude that Plymale's escape conviction is supported by sufficient evidence. First, the State presented sufficient evidence to support a finding that Plymale broke or attempted to break his

supervised release. The State presented unrefuted testimony that Plymale failed to report in from November 9, 2018 to his subsequent arrest on December 7, 2018.

{¶33} Plymale argues that "[n]othing about the conduct of [Plymale] shows that he was trying to break his supervision." (Appellant's Brief at 9). However, the State presented evidence that Plymale failed to follow the orders given to him by his supervising officer, despite being required to do so under his Conditions of Supervision. Officer Frazier offered undisputed testimony that Plymale failed to report in to his office despite Officer Frazier's order that Plymale do so. In fact, Officer Frazier's testimony indicated that Plymale failed to follow his order to report in or contact him despite Officer Frazier's repeated attempts to make contact with him, including two visits to Plymale's residence.

{¶34} Nevertheless, Plymale argues that "[Plymale] had no reason to fail to report in" and contends that "even when struggling with drug issues, [Plymale] continued to report in to probation in the past." (*Id.*). However, Plymale's argument is misguided. Although the State has the burden of proving each of the elements of the offense, the State is not required to provide a reason why Plymale failed to obey Officer Frazier's instructions, as that is not an element of the offense. Accordingly, we conclude that a rational trier of fact could find that Plymale broke or attempted to break his supervised release.

{¶35} In addition, a rational trier of fact, evaluating Plymale's conduct under the circumstances, could find that it was Plymale's specific intention to break or attempt to break his supervised release. Plymale argues that the State provided "no evidence" upon which a rational trier of fact could conclude that he acted with the purpose to break his supervised release. (*Id.*).

{¶36} Although Plymale is correct that the State did not provide any direct evidence, as we previously stated, intent to commit a criminal offense may be inferred from the surrounding facts and circumstances and can be established through circumstantial evidence. *See Swaney*, 2019-Ohio-3141, at ¶ 11; *Kennedy*, 2018-Ohio-4172, at ¶ 25. "'The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.'" *In re Washington*, 81 Ohio St.3d 337, 340 (1998), quoting *State v. Huffman*, 131 Ohio St. 27 (1936), paragraph four of the syllabus. Thus, the fact that the State did not provide direct testimony regarding Plymale's intent does not mean that the State failed to meet its burden of proof.

{¶37} Here, any rational trier of fact could find beyond a reasonable doubt that Plymale acted with the purpose of breaking or attempting to break his supervised release. When viewing the evidence in a light most favorable to the

prosecution, the record establishes that Plymale was aware of his Conditions of Supervision, which included the requirement that he follow all orders given to him by his supervising officer. Yet, as we found above, Plymale failed to follow Officer Frazier's instructions and report as directed. These facts could allow the jury to infer that by failing to follow Officer Frazier's instructions, Plymale was acting with the intention to break his supervised release. Thus, viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the State proved the purpose element of escape. *See State v. Smith*, 8th Dist. Cuyahoga No. 88002, 2007-Ohio-717, ¶ 3, 19 (affirming an escape conviction where the parole board declared the defendant "whereabouts unknown"). Accordingly, we conclude that Plymale's escape conviction is supported by sufficient evidence.

{¶38} Having concluded that Plymale's escape conviction is based on sufficient evidence, we next address Plymale's argument that his conviction is against the manifest weight of the evidence. *See Velez*, 2014-Ohio-1788, at ¶ 76.

{¶39} Plymale asserts that his conviction is against the manifest weight of the evidence because his actions of missing certain appointments or not calling within the desired time frame are part of the "standard conduct" established between Plymale and his supervising officer. (Appellant's Brief at 10). Moreover, Plymale argues that because his home address was known, his supervisor was, therefore, able

to contact him at will and had done so, through his aunt, in the past. (*Id.*). We disagree.

{¶40} Plymale's argument that his conviction is against the manifest weight of the evidence because his actions were consistent with a course of conduct that developed between him and his supervising officer is without merit. In support of his position, Plymale refers to three instances in 2017 in which more than thirty days elapsed where he was not required to check in with his supervising officer. However, in those instances, there was not testimony that Plymale's supervising officer had instructed him to report in during these intervals. Thus, we cannot analogize those intervals with the relevant intervals in the present case. Furthermore, Plymale's argument is based on the assertion that he did not intend to violate the statute on this occasion because he had managed to avoid sanctions from non-compliance numerous times in the past. However, Plymale's supervising officer's decision not to sanction Plymale for earlier non-compliance does not prove that he was unaware of the requirements of his supervised release. *See State v. Young*, 8th Dist. Cuyahoga No. 99552, 2013-Ohio-5247, ¶ 19 (finding that the supervising officer's "refusal to sanction Young for earlier non-compliance does not prove that Young was unaware of the requirements of his supervised release detention").

{¶41} Finally, we are not persuaded by Plymale's argument that his escape conviction is against the manifest weight of the evidence because Officer Frazier knew Plymale's home residence during the relevant time period. Despite the fact that Officer Frazier knew Plymale's home address, Officer Frazier was unable to locate Plymale because Plymale failed to follow Officer Frazier's instructions. Moreover, the fact that Plymale lived only several blocks away from the APA office makes his failure to report to the office even more egregious.

{¶42} Therefore, having weighed the evidence and all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not clearly lose its way and create such a manifest miscarriage of justice that Plymale's conviction must be reversed. Accordingly, Plymale's conviction is not against the manifest weight of the evidence.

{¶43} Plymale's assignment of error is overruled.

{¶44} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**