[Cite as *State v. Howard*, 2024-Ohio-2410.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2023 CA 0052 |
| | : | |
| TROY D. HOWARD | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court
of Common Pleas, Case No. 2023 CR
0288 R

JUDGMENT:     AFFIRMED IN PART; REVERSED AND
REMANDED IN PART

DATE OF JUDGMENT ENTRY:     June 21, 2024

APPEARANCES:

For Plaintiff-Appellee:

JODIE SCHUMACHER
RICHLAND COUNTY PROSECUTOR

MARTIN I. NEWMAN
38 South Park Street
Mansfield, OH 44902

For Defendant-Appellant:

WILLIAM T. CRAMER
470 Olde Worthington Road, Suite 200
Westerville, OH 43082

*Delaney, P.J.*

{¶1} Defendant-Appellant Troy D. Howard appeals the September 13, 2023 sentencing entry of the Richland County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On April 19, 2023, the Richland County Grand Jury indicted Defendant-Appellant Troy D. Howard on one count of escape, a fifth-degree felony in violation of R.C. 2921.34(A)(3). The matter came on for a jury trial on August 28, 2023 where the following evidence was adduced at trial.

{¶3} On January 11, 2012, in the Richland County Court of Common Pleas, Case No. 2012-CR-0007 H, Appellant was sentenced to five years in prison. His five-year prison term was to be served consecutively to his January 11, 2012 sentence in Richland County Court of Common Pleas, Case No. 2011-CR-0589, where he was sentenced to three years in prison. Appellant began serving his sentence on January 23, 2012.

{¶4} As part of his sentence, Appellant was ordered to serve five years of mandatory post-release control. Due to his conviction in Case No. 2011-CR-0589, Appellant's post-release control would start on December 10, 2019.

{¶5} Appellant's probation officer testified that Appellant appeared at the Adult Parole Authority office on December 11, 2019. The probation officer was at lunch and Appellant left the office before the probation officer's return to the office. The probation officer requested that Appellant return the following day. On December 12, 2019, Appellant returned to the Adult Parole Authority office and met with the probation officer where the probation officer provided Appellant with a form that listed the terms and

conditions of his post-release control supervision. Appellant and the probation officer signed the Conditions of Supervision form.

{¶6} Appellant was incarcerated in the Richland County Jail on December 7, 2022. On December 7, 2022, Appellant's probation officer met with Appellant at the Richland County Jail where she issued Appellant a unit sanction for a minor violation of his post-release control. Appellant and the probation officer signed a Sanction Receipt. The Sanction Receipt contained additional terms including that Appellant would reside at his APA approved residence every night, he would report to his supervising officer every Thursday, he would report to his supervising officer immediately upon release from custody, he would be screened by CDS and complete all recommendations, and he would comply with the conditions of his supervision.

{¶7} While he was incarcerated at the Richland County Jail, the probation officer notified Appellant that Appellant had an active felony warrant through Summit County. The probation officer testified she told Appellant that she did not know when Summit County was going to pick him up for that warrant; however, when Appellant was out of custody, the probation officer told Appellant that he was to report to Adult Parole Authority immediately. He appeared to understand her instructions.

{¶8} Summit County picked Appellant up and he was released from the Summit County Jail on December 19, 2022. Appellant did not report to the Adult Parole Authority after his release from the Summit County Jail. Appellant's had listed his mother's address as his APA approved residence. The probation officer contacted Appellant's mother who told her that he was not residing there, which was a violation of his December 7, 2022 Sanction Receipt.

{¶9} On January 31, 2023, the Adult Parole Authority declared Appellant a violator at large and a warrant was issued for Appellant's arrest.

{¶10} The jury found Appellant guilty of the charge of escape.

**Sentencing**

{¶11} The trial court held a sentencing hearing on September 11, 2023. The State asked the trial court to impose prison time for the underlying offense and impose the remaining time on post-release control. The trial court found that Appellant had 1,304 days of post-release control time available. (T. 80). It then stated:

> However, ODRC, Adult Parole Authority, reduces that number while the person is in jail on new charges. * * * I did receive the more recent one that said 1,304 days. That was in April of 2023. That was at that time. Since April until we get to September, those days have come off. As of August 29th, 2023, ODRC through the Adult Parole Authority says he has 1,178 days available, and then more days have been subtracted from that until we get to today's date, which is September 11th, 2023.
>
> * * *
>
> So what I will do is I will go ahead and impose the PRC time period by my math, he still has 1,164 days of PRC time. I'll impose that as prison time and run it consecutive to the 12 months in prison for the 5th degree felony escape.

(T. 80-81). There was no introduction into the record as to the documentation from the Adult Parole Authority stating the calculation of Appellant's post-release control, such as the August 29, 2023 notification referenced by the trial court.

{¶12} The trial court journalized Appellant's sentence on September 13, 2023. It is from this sentencing entry that Appellant now appeals.

## ASSIGNMENTS OF ERROR

{¶13} Appellant raises three Assignments of Error:

I. APPELLANTS RIGHTS TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY A CONVICTION THAT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

II. APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE

III. APPELLANT'S PRISON TERM FOR THE REMAINING POST-RELEASE CONTROL TIME WAS NOT PROPERLY CALCULATED.

## ANALYSIS

### I. and II.

{¶14} In his first and second Assignments of Error, Appellant argues his convictions were against the sufficiency and manifest weight of the evidence. We disagree.

{¶15} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶16} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶17} Appellant was found guilty of escape, in violation of R.C. 2921.34(A)(3). The statute reads, "No person, knowing the person is under supervised release detention or being reckless in that regard, shall purposely break or attempt to break the supervised release detention or purposely fail to return to the supervised release detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement." Appellant does not dispute that R.C. 2921.34(A)(3) applies to post-release control supervision regardless of whether any physical detention is involved. *See State v. Thompson*, 2004-Ohio-2946; *State v. Adams*, 2004-Ohio-4205, ¶ 23 (5th Dist.) (a parolee who fails to report to his parole officer after March 17, 1998, may be prosecuted for escape under R.C. 2921.34).

{¶18} Appellant argues the issue in the present case is whether the State established Appellant acted purposefully when he broke or attempted to break the supervised release detention. R.C. 2901.22(A) states that a "person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." The legislative notes to R.C. 2921.34 state, "Under the section, proof of guilt of escape requires a showing that the offender knew he was under detention or perversely disregarded a risk that he was under detention. The purpose of this requirement is to protect those who don't know and have not reasonably been informed that they are under detention, or who reasonably believe they are the victims of an illegal detention committed for the purpose of harming them in some way."

{¶19} Appellant argues the State failed to present any evidence that a juror could infer Appellant had a purposeful intent to break his supervised release detention by failing to report to the Adult Parole Authority after he was released from the custody of Summit County. We disagree.

{¶20} The record in this case shows that Appellant reported to his Adult Parole Authority probation officer on December 11, 2019, who was not available at that time. Upon of the probation officer's instruction, Appellant returned to the office on December 12, 2019, where he was notified of the terms and conditions of his post-release control. Appellant signed a Conditions of Supervision, countersigned by the probation officer, on December 12, 2019. On December 7, 2022, a probation officer met with Appellant at the Richland County Jail to notify him of his violation of his post-release control. Appellant

signed a Sanctions Receipt. The probation officer testified she explained the terms and conditions of the Sanctions Receipt to Appellant, which included the requirement to reside at the APA approved residence. The probation officer also told Appellant that when he was released from the Summit County Jail, he was to immediately report to the Adult Parole Authority. The probation officer testified that Appellant appeared to understand her instructions.

{¶21} In *State v. Plymale*, 2020-Ohio-1190 (3rd Dist.), the Third District Court of Appeals examined a similar argument as to whether the State presented sufficient evidence to support a finding that a defendant purposefully broke or attempted to violate his supervised release for purposes of R.C. 2921.34. The court stated as to the nature of the evidence presented:

Although Plymale is correct that the State did not provide any direct evidence, as we previously stated, intent to commit a criminal offense may be inferred from the surrounding facts and circumstances and can be established through circumstantial evidence. *See Swaney*, 2019-Ohio-3141, at ¶ 11; *Kennedy*, 2018-Ohio-4172, at ¶ 25. " 'The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.' " *In re Washington*, 81 Ohio St.3d 337, 340 (1998), quoting *State v. Huffman*, 131 Ohio St. 27 (1936), paragraph four of the syllabus. Thus, the fact that the

State did not provide direct testimony regarding Plymale's intent does not mean that the State failed to meet its burden of proof.

*State v. Plymale*, 2020-Ohio-1190, ¶ 36 (3rd Dist.).

{¶22} Here, any rational trier of fact could find beyond a reasonable doubt that Appellant acted with purpose when he did not report to the Adult Parole Authority after his release from the Summit County Jail. Appellant previously followed the probation officer's instructions to report to the office on December 12, 2022. The record in this case establishes that Appellant was instructed as to the terms and conditions of his post-release control through the Conditions of Supervision and of the Sanctions Receipt, which included residing at an APA approved residence. The probation officer testified that she instructed Appellant on December 7, 2022 to report to the Adult Parole Authority immediately after he was released from the custody of Summit County. Appellant was released from the custody of Summit County on December 19, 2022 and he did not report to the Adult Parole Authority by January 31, 2023. Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the State proved the purpose element of escape.

{¶23} We find that the manifest weight of the evidence in this case supports the jury's finding that Appellant's failure to report was purposeful. The jury did not clearly lose its way and created such a manifest miscarriage of justice that Appellant's conviction must be reversed.

{¶24} Appellant's first and second Assignments of Error are overruled.

**III.**

{¶25} In his third Assignment of Error, Appellant contends the trial court did not correctly calculate Appellant's post-release control time.

{¶26} "R.C. 2929.141 governs sentencing for a felony offense committed while on post-release control * * *." *State v. Mills*, 2022-Ohio-2821, ¶ 7 (3rd Dist.) quoting *State v. Murray*, 2017-Ohio-1293, ¶ 10 (4th Dist.). At the sentencing hearing on September 11, 2023, the trial court first noted that Appellant had 1,304 days of post-release control time available as of April 2023. It stated the ODRC reduced the days while the defendant was in jail on new charges. The trial court then stated that as of August 29, 2023, the ODRC informed the trial court that Appellant had 1,178 days of post-release control days remaining. According to the trial court's calculations, it found Appellant had 1,164 days of post-release control time and imposed the same to run consecutively to Appellant's twelve-month prison term. No APA or ODRC documentation as to the calculation of post-release control was submitted in the sentencing hearing record.

{¶27} Appellant was released from prison on December 10, 2019, with five years of post-release control. Appellant argues that pursuant to his calculations and cited case law including *State v. Wells*, 2015-Ohio-39 (5th Dist.), Appellant's post-release control terminated on December 10, 2024; therefore, Appellant would have 455 remaining days of post-release control on September 11, 2023, when the trial court revoked his post-release control and sentenced him.

{¶28} In its appellate brief, the State concedes that Appellant's calculation of 455 remaining days is correct if the time was calculated from December 10, 2019 to September 11, 2023. The State argues, however, Appellant does not take into

consideration that the Adult Parole Authority declared Appellant a violator, which stayed the calculation of post-release control. In support of its argument, the State attaches APA records that were not introduced before the trial court, so this Court cannot consider them as they are outside the trial court record. *Thompson v. Dennis*, 2023-Ohio-3946, ¶ 35 (5th Dist.) citing *Cable v. Cable*, 2023-Ohio-2041, ¶ 41 (5th Dist.) citing *Cleveland v. Alexander*, 2014-Ohio-5282, ¶ 21 (8th Dist.) citing *State v. Hartman*, 93 Ohio St.3d 274, 299, 2001-Ohio-1580; *State v. Carter*, 89 Ohio St.3d 593, 606, 2000-Ohio-172.

{¶29} On this record, this Court cannot reach a conclusion as to Appellant's third Assignment of Error. We reverse the sentence in this matter only as to the trial court's calculation and imposition of Appellant's remaining time of post-release control. We remand the case for the trial court to (1) calculate the amount of time that Appellant has remaining on his post-release control pursuant to R.C. 2929.141, *State v. Wells*, 2015-Ohio-39 (5th Dist.), *State v. Mills*, 2022-Ohio-2821 (3rd Dist.), and *State v. Harris*, 2014-Ohio-4237 (1st Dist.) and (2) explain the trial court's calculation of time for the purposes of appellate review.

{¶30} Appellant's third Assignment of Error is sustained.

## CONCLUSION

{¶31} The judgment of the Richland County Court of Common Pleas is affirmed in part and reversed and remanded in part, for further proceedings consistent with this Opinion and law.

By: Delaney, P.J.,

Hoffman, J. and

Baldwin, J., concur.